CHICAGO DEMOLISHING CO., INC., v. WERK

(January 27, 1930. Opinion and Decree.)

Woodville and Woodville of New Orleans, attorneys for plaintiff, appellee.

Pomes and McCabe of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Chicago Demolishing Company, Inc., had undertaken to demolish and remove a large building on Baronne street, near Poydras street, and as Robert Werk desired to purchase the steel framework of the building and certain other parts thereof a contract was entered into between them reading as follows:

"Know all men by these presents, that the Chicago Demolishing Co., Inc., herein represented by E. J. Lamothe, Jr., First Vice President and General Manager, sells, assigns to Robert Werk, the steel frame complete, including three staircases and all skylights, of the old Winter Garden, situated on Baronne between Poydras and Lafayette streets, for the sum of two thousand six hundred and fifty dollars ($2,650.00), on the following conditions, to wit:

"The said Chicago Demolishing Co., Inc., are to demolish and take apart the said frame without injury to its capacity for re-erection and to haul and store same at the expense and cost of the said Chicago Demolishing Co., Inc., binds and obligates themselves to deliver every piece of said frame in good condition any time that the said Robert Werk may demand same within the period as fixed by this contract. The additional cost of hauling from the yard of the said Chicago Demolishing Co., Inc., to any place where the said Robert Werk may desire will be at the cost and expense of the said Robert Werk.

"The said Robert Werk has this day paid to the said Chicago Demolishing Co., Inc., on account of the purchase price herein, the sum of two thousand dollars ($2,000.00), receipt whereof is hereby acknowledged and for the balance, the sum of six hundred and fifty dollars ($650.00), same to be paid when the said steel frame is delivered to the said Robert Werk in good condition.

"It is further agreed that the sprinkling system, exclusive of the tank, compressor, water pump, electric motor and base, which was removed by the Chicago Demolishing Co., Inc., from the aforesaid building will be stored by them and they hereby agree to sell same to the said Robert Werk, the same to be delivered at the same time as the steel frame for the following consideration, to wit: Eighteen dollars per ton.

"Signed in duplicate this 19th day of May 1926. Robert Werk. (Signed) Chicago Demolishing Co., Inc., per E. J. Lamothe, Jr., 1st Vice Pres."

The building was demolished and the steel framework was removed to the yard of the demolishing company. Some six months later Werk employed draymen and moved the material away, and thereafter used most of it in the construction of another building.

Since only $2,000 had been paid by Werk to the demolishing company, there was due under the contract $650, which

Werk neglected to pay, and this suit is for the collection of that amount.

As a defense, Werk contends that he has never received certain framework and material and he itemizes this shortage as follows:

- 5 Channels 12 in. 18 ft. long.
- 1 I-beam 18 in. 27 ft. long.
- 1 Beam 12 in. 18 ft. 2 in. long.
- 2 Beams 12 in. 19 ft. 2 in. long.
- 1 Beam 10 in. 26 ft. 6 in.
- 1 Beam 10 in. 27 ft. 6 in.
- 5 Beams 10 in. 27 ft. 6 in.
- 39 Channels 7 in. from 13 ft.
- 21 Channels 7 in. to 19 ft. 2 in.
- 190 Channels 3 in. and 4 in. (with wood) 6 ft. and 8 ft. long.
- 6 Stair Rails 28 ft. long by 3 ft. high 2 in. pipe, proscenium railing (2 in. pipe posts).
- 12 Newels for stairs (3 stairs).
- 1 Stairs 28 ft. long by 8 in. wide with 26 risers (treads received).
- 37 Bedplates.

Werk not only refuses to pay the balance claimed, but, by way of reconventional demand, asks for judgment against plaintiff in the sum of $2,554.52, claiming this as the value, on a replacement basis, of the materials which he avers he did not receive.

Some 20-odd years ago the building in question was erected as a beer hall and music garden. The venture proved unprofitable and the structure was then converted into a theater.

Financial misfortune again closed the doors and some time thereafter the owners made the necessary alterations to convert the building into a skating rink.

This enterprise also failed, but the owners, with commendable persistency, prevailed upon a prize fight promoter to take over the operation of the place and made such structural changes as were necessary to fit it for the new venture. This scheme, like the earlier ones, proved unremunerative, and finally it was decided to use the place as an automobile garage, which, however, like all the former attempts, produced no financial return.

The evidence as to these various enterprises and with reference to the different structural changes necessitated by each is very meager, but we are well convinced of the substantial correctness of the above historical sketch, and we are also certain that considerable alterations were, from time to time, made.

The above recital is necessary, because the shortage now claimed by Werk seems almost entirely to result from the fact that he checked the materials delivered to him against the plans and specifications under which the building had been originally erected some 20 or more years before, and as a result of said check found that according to those plans, the materials listed had formed part of the original building but had not been delivered to him.

The first question which we are called upon to consider is whether the contract contemplated that Werk was to get only what was actually in the building at the time of the contract, or was entitled to receive what had been called for by the plans prepared for the building as erected years before, and as it existed prior to the several alterations.

The only portion of the contract which throws any light on this question is the first sentence of the second paragraph, which reads as follows:

"The said Chicago Demolishing Co., Inc. are to demolish and take apart the said framework without injury to its capacity for re-erection. * * *".

Manifestly, it was not within the power of the demolishing company, or of any one else, to take apart any other framework than that which existed at the time of the contract.

If it had been intended otherwise, it would have been a very simple matter to have inserted in the contract that the material sold was such as the framework had originally contained, or some similar words, which would have left no room for doubt. The contract was prepared by Werk's attorney, and, if it is ambiguous any uncertainties should be resolved against Werk. It would have been very foolish on the part of the demolishing company to have agreed to sell the framework as it originally was erected, because it was clearly not within its power to deliver something that did not exist.

That Werk knew that he was to get only such framework as existed at the time of the confection of the contract is evidenced by the fact that he carefully inspected the framework before he bought it and by the further significant fact that he did not examine the blueprints and plans until long after the material was delivered to him. If he had had any idea that he was buying according to plans he would have insisted on seeing those plans before he closed his contract. An attempt was made to show that he did ask for the plans, but we believe that the evidence to the contrary substantially preponderates.

We feel that Werk was entitled to what was in the building at the time of the execution of the contract, and not to such additional parts as may have been originally included.

The material was stored by the demolishing company for Werk's account, and was removed by Werk without objection or protest, and, since no charge of shortage was claimed until long after it was in Werk's possession, we feel that the burden rests heavily upon him to show definitely and positively what parts were not delivered to him, but were contained in the building when the contract was made.

So far as the bed plates are concerned, it is not disputed that they were cast iron and not structural steel, and it necessarily follows that they were not included in the contract of sale. It is true that some few of them were delivered to Werk, but the evidence shows that this resulted from the fact that the demolishing company had no use for them, and therefore delivered to Werk such as were removed from the structure, although he was not entitled to them under his contract. We are well convinced that very often steel framework of the kind in question is erected on concrete foundations without the use of such bedplates, and it was therefore not absolutely essential that the purchaser of the framework should also obtain the bedplates.

Much ado is made over the fact that the agreement specifically included three

staircases whereas it is now contended that only two were delivered. On a first reading of the record we gained the impression that one of the staircases was entirely missing. However, an analysis of the list of claimed shortages convinces us that such is not the case, because on the list itself we find the following: "1 Stairs 28' long by 5' 8" wide with 26 risers (treads received)."

The stairway consisted of two sides and the treads. There is no evidence that this particular stairway, the 28-foot one, ever had any risers, and it is common knowledge that this type of steel stairway is often constructed without risers. Therefore the only parts missing were the two sides. What became of these sides the evidence does not show, but it does show that everything contained within the building was hauled to the yard, and it does show that everything at the yard was hauled away by Werk without protest on his part. However, this item appears to us to be trivial.

The other items are almost exclusively channel irons and beams, and unquestionably were removed during the various remodelings of the structure. Noisen, the expert produced by defendant to check up the material received against the plans, seems to have made substantial errors in his calculations. According to his own testimony, as it appears on pages 38 and 39, many corrections were made by him in his original list.

The evidence as to the burning up of a few channel irons, and as to the sale of a few others, is very unconvincing. Plaintiff explains that the boiler room and storeroom were also demolished, but that the materials contained therein were not sold to defendant, and that such items as were destroyed or sold to others were from these two buildings, and not from the main framework.

We find the testimony of Stockfelt particularly unimpressive. His animosity manifests itself plainly. On two occasions, when his integrity was not in any way questioned, he volunteered the statement: "I am telling what is the absolute truth." The fact is that he had at one time been employed by plaintiff, but had thereafter been engaged by defendant, and he was as openly antagonistic to plaintiff as he was sympathetic to the cause of defendant.

Werk's attempt to recover by reconvention for the alleged shortage of a few parts, practically as much as he had contracted to pay for the whole, does not evidence a reasonable, or fair attitude, particularly as he did not need the new parts, for the furnishing of which he obtained bids, and did not purchase them, but erected a building with such part of the old framework as was delivered to him.

The entire defense appears to us to be an afterthought, determined upon by defendant to avoid paying the balance due by him. We fully agree with the trial judge, who rendered judgment for plaintiff as prayed for on the main suit, and dismissed the reconventional demand.

The judgment appealed from is affirmed, at the cost of appellant.