YARRUT, Judge.
Plaintiffs (husband and wife) as holders ■of a promissory note for $52,441.75 executed by Defendant, sued to recover, that amount, plus interest, attorney’s fees and ■costs.
Defendant admits the execution of the note, but pleads in compensation and re-convention a claim against Plaintiffs in the ■amount of $74,150.33, or a net judgment against Plaintiffs in reconvention for $21,-708.58, with legal interest from judicial ■demand, and all costs. Defendant, in its .appellate brief, reduces the reconventional claim to $67,459.77, or a net judgment of $15,018.02, plus interest and costs.
From a judgment by the district court in favor of Plaintiffs for the amount of the note, and a’ dismissal of Defendant’s re-conventional demand, Defendant has taken this appeal.
Reference herein to Plaintiff or Plaintiffs, unless otherwise specified, will be to Clay Calhoun, only.
The respective claims of the parties arose from an agreement of sale, dated October 31, 1961, in which Defendant purchased the Louisiana Materials Co., Inc. by acquiring all of its capital stock (20 shares) from Plaintiffs — 19 shares from the husband and •one share from the wife. As consideration Defendant assumed the following obligations, among others:
(1) A note for $218,489.80 executed by Louisiana Materials in favor of the Small Business Administration, on which Plaintiffs were personally liable;
(2) Other notes executed by Louisiana Materials, totalling $145,575.24, on some of which Plaintiffs were personally liable;
(3) Agreement to employ Plaintiff to manage the Company at a minimum annual compensation of $18,000.00, plus 10% of the profits of the Company;
(4) Paid Plaintiffs $22,730.38 in cash;
(5) Gave two notes to Plaintiffs, one for $1500.00 and one for $52,441.75 (the note herein sued on), payable in 20 quarterly installments, nineteen for $2622.08 each and the twentieth installment for $2622.23.
Defendant answered denying liability for payment of the last named note, charging that Plaintiffs had breached certain warranties made by them in the agreement of sale that caused Defendant a loss of $59,-276.10 and $17,141.73; $59,276.10 representing the difference between the quantity of shell inventoried, which Plaintiffs represented Louisiana Materials had on hand at the time of the sale, and the amount it actually delivered to Defendant, plus $17,-141.73, the amount of understated liabilities of Louisiana Materials which Plaintiffs failed to disclose to Defendant, which Defendant must pay.
The agreement of October 31, 1961 provided, inter alia, as follows:
“(2) Sellers severally and in solido, each binding his and her separate estates to the full extent of any liability resulting therefrom, warrant and agree as follows
•fi «{» ‡
“(g) Sellers know of no material facts affecting Louisiana Materials or Heartland which have not been disclosed to Purchaser. * * * ”
Therefore, to establish a. breach of warranty under subparagraph (g), Defendant need prove: (1) a material fact, (2) not disclosed to Defendant, (3) within the knowledge of Plaintiffs.
Plaintiffs urge that any liability, and the extent thereof in reconvention, for which they may be liable for a breach of the agreement can only be offset against Plaintiff’s future earnings as an employee of De *21 -fendant, not the note herein sued upon, under Par. 3(b) of the sales agreement, reading:
“(b) Sellers shall have no personal liability for any breach of warranty contained in subparagraph (a) of this Paragraph (3), it being agreed between the parties that the sole remedy of Purchaser for such breach of warranty shall be for Purchaser to cause Louisiana Materials to diminish, to the extent of Sellers’ liability for such breach of warranty, the amount, if any, which ■would otherwise be due by Louisiana Materials to Clay J. Calhoun under and pursuant to the provisions of the employment contract which Louisiana Materials and Clay J. Calhoun are entering into coincidentally with the execution hereof whereby Louisiana Materials is agreeing to pay to Clay J. Calhoun an amount equal to 10% of the net profits of Louisiana Materials for the period and on the terms and conditions set forth in such employment ■contract. The limitation set forth in this subparagraph .(b) shall not apply to any breach of warranty contained in subparagraph (g) of Paragraph (2) or to any breach of any other warranty not expressly subject to the limitations of this subparagraph (b).”
Since the entire case on the merits "Vva.s heard by the district court, and liability vel non must ultimately be determined, we .have decided to exercise our discretion and decide the issue-bf liability now, rather than relegate the parties to repetitious and useless litigation on such issue, as authorized by LSA-C.C.P. Art. 2164, reading:
“The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The ■court may award damages for frivolous .appeal; and may tax the costs of the lower or appellate court, or any part ■thereof, against any party to the suit, .as in its judgment may be considered ■equitable.”
Defendant claims that Plaintiffs breached the warranties in Par. 2(g) of the sale agreement by (1) overstating the amount of shell inventory owned by Louisiana Materials as of July 31, 1961, and (2) failing to disclose certain liabilities of Louisiana Materials existing on July 31, 1961. The testimony heard by the district court develops these facts:
In mid-August, 1961, Plaintiffs presented Defendant an Interim Financial Report (balance sheet and profit and loss statement), showing the assets and liabilities of Louisiana Materials as of July 31, 1961. The Report contained, the following statement:
“Because of the urgent need for these interim statements, time did not permit us to perform all necessary audit procedures such as confirmation of accounts, physical checking of inventory, etc., and therefore, our engagement did not call for the expression of an opinion.”
Between mid-August, when the report was received, and October 31, 1961 when the sale took place and the warranties were made, Defendant had complete access' to the records of Louisiana Materials. Plaintiffs made no effort in that period to hide the affairs of Louisiana Materials from Defendant. Most important, Defendant made use of its right of access by having its certified public accountant (Mr. Goodspeed) spend considerable time inspecting the records and interviewing the personnel of Louisiana Materials. Mr. Goodspeed testified :
“Q. Now Mr. Goodspeed, I take it from your answers to these questions that you spent a good deal of time on the books of Louisiana Materials Company?
“A. I spent a good week, maybe some more in the August-September examination of the records in connection with the July 31, 1961, presentation * * * ”
♦ * * * ♦ *
*22 "Q. What specifically did he (Mr. Durant of Defendant corporation) ask you to do ?
“A. It’s a little hard to recollect pre-. cisely but as I recall it was to see from available records and information available just what were the assets and liabilities as I could determine as contrasted with the presentation in the report.
“Q. You were to determine as accurately as you could with the aid of or independently of the record what they consisted of?
“A. Yes.
“Q. Now you spent sometime at the office of Louisiana Materials Company ?
“A. Yes, sir, over a week, I’d say, in broken days but over a week’s time.
"Q. And also at the office of Robert & Favaloro (accountants who prepared the report) ?
“A. Yes, sir, I spent several hours.
"Q. And I presume you spent some time on your own with the information that you had developed?
“A. Oh, yes, yes.
“Q. Did you have access to Robert & Favaloro’s records?
“A. Yes, Mr. Favaloro and Mr. Fiver made about anything I seemed to need from their records available.
“Q. Did you question personnel of Louisiana Materials Company about the books and the records?
“A. Yes. They furnished me with information, documents, invoices, files and aswered questions.”
By October 31, when the sale papers were signed and the warranties made, Defendant’s accountant had sufficient time and opportunity to discover any misstatements of inventory and undisclosed liabilities of Louisiana Materials, especially since .Defendant was put on guard by the statement in the Interim Financial Report that certain audits and checks' had not been made. Defendant should not be heard to plead ignorance of the true facts and now take advantage of warranties placed in the October 31 sale agreement.
Further, Defendant did not take steps to check the correctness of the warranties, but allowed more than five months to pass before attempting to determine the accuracy of the July 31 inventory. As to. the hidden liabilities, Defendant admitted,, through its accountant (Mr. Goodspeed),. that it knew of most of the liabilities prior to the October 31 sale. Yet Defendant did not choose to take legal advantage of its knowledge until mid-1962. A party who unreasonably delays asserting his rights under the warranties of a contract is es-topped to prove alleged inaccuracies. Tex-O-Kan Flour Mills Co. v. Nord, La.App., 18 So.2d 50; Mississippi-Louisiana Syrup Co. v. Russell Sugar Co., 11 La.App. 520, 124 So. 315. In any event, such party bears the burden of proof. Chicago Demolishing Co. v. Werk, 12 La.App. 343, 126 So. 76; Chaignaud v. Baden, La.App., 81 So.2d 76.
It must be remembered that the hilly stockpile of loose shells was diminished and replenished during the five months Defendant operated the business of dredging and. selling the shells forming the stockpile.
Plaintiffs’ accountant (Mr. Favaloro),. who prepared the July 31 Report, explained his calculations of the shell inventory, based, on three different physical inventories. Using inventories of October 24, 1960 and July, 1960, Mr. Favaloro added production and subtracted sales from those dates to-July 31, 1961. He then added 10% of shell production for recoverage of compacted and lost shells and came up in both cases with figures of about 60,000 cubic yards of shells. The third inventory, taken. *23 in July, 1961 by Mr. Ansley, a surveyor and •employee of Louisiana Materials, showed 58,524 cubic yards of shell, the figure actually used in arriving at the value of inventory in the July 31 Report.
The testimony of Mr. Butts, who took the October 24, 1960 inventory; Mr. Calhoun, who took the July, 1960 inventory; and Mr. Ansley, who took the July, 1961 inventory, indicated they were all experienced engineers or surveyors and used accepted meth•ods of measurement. All three took into account about three feet of subsurface shell, •on the theory that such shell, the result of compacting and sinkage at the base of the pile, is recoverable and saleable.
To justify the addition of 10% of production, Mr. Favaloro testified that it was the Company’s regular practice to deduct about 20% of production on the books to account for loss through compacting and droppage in loading and unloading the barges. By •comparing his three inventory measurements he determined that about 10% of the 20% was recovered and must be added back to the book inventory. To support this view a graph was .introduced showing that book inventory over the years had consistently been lower than physical inventory.
Defendant’s experts were Mr. Goodspeed, •certified public accountant, and Mr. Thompson, civil engineer. Mr. Thompson made two measurements, one on April 2, 1962, and one on April 30, 1962, but Defendant relies only on the latter. Like Plaintiffs’ experts, he used accepted methods and ■mathematical formulas. He did not consider it proper, however, to include subsurface shell.
Mr. Goodspeed, using the April 30, 1962 ■measurement, worked back, adding production and subtracting sales, to July 31, 1961. He thus determined that the inventory as of July 31 was 18,126 cubic yards, .approximately 40,000 cubic yards less than Plaintiffs’ figure.
With this conflict among the experts, each using accepted methods of measurement and supporting its calculations, yet reaching different results, and the failure of Defendant to discredit Mr. Ansley’s actual measurement in July, 1961, the date of Plaintiffs’ Interim Financial Report, we must hold that Defendant has failed to sustain the burden of disproving the inventory figures contained in that Report.
Defendant; has also failed to substantiate its claim for understated liabilities. The Plaintiffs’ testimony develops that several of these items appeared on the schedule of Accounts Payable, delivered to and discussed with Mr. Goodspeed, Defendant’s accountant, prior to October 31. For two others, invoices were received too late to show up 'in the July 31 Report. For several items the date of receipt by Louisiana Materials does not appear on the invoice; Defendant did not prove the invoices were received prior to July 31. The evidence showed Plaintiffs, for intervening reasons, paid two items in August, 1961, for which they had previously denied liability, and had thus not kept on their books. Several items were shown either never to have been paid or enforced in the past, or to have prescribed. Two items, due before July 31, were not paid or entered until after that date because of bookkeeping practices of the Company. For two others, the exact amount of liability was not determined until after July 31, 1961. One item, not entered because disputed by Plaintiffs, has still not been paid. The last item is interest and penalties on unpaid taxes. Although the interest and penalties were not entered prior to July 31, the taxes were entered and were discussed with Defendant’s accountant before the sale. Defendant’s evidence was not sufficient to disprove these explanations.
Defendant had sufficient opportunity to discover any errors in Plaintiffs’ financial statement before the sale without relying on the warranties. Since Defendant has not borne the burden of proving its alleged *24 loss, the source from which any such loss would be payable is now moot.
For the reasons herein assigned, the judgment appealed from is affirmed; Defendant to pay costs in both courts.
Affirmed.