206 So.2d 147 (1968)
Clay J. CALHOUN
v.
LOUISIANA MATERIALS CO., Inc.
No. 2816.
Court of Appeal of Louisiana, Fourth Circuit.
January 9, 1968.
Rehearing Denied February 5, 1968.
Writ Refused March 25, 1968.
*148 Lemle & Kelleher, Murphy Moss, New Orleans, for plaintiff-appellee.
Milling, Saal, Saunders, Benson & Woodward, Neal D. Hobson and Herschel L. Haag III, New Orleans, for defendant-appellant.
Before YARRUT, CHASEZ and JANVIER, JJ.
YARRUT, Judge.
This case is a sequel to the case of Calhoun v. American Marine Corporation, La.App., 159 So.2d 19.
Plaintiff seeks recovery on an employment contract for various amounts, viz: $2,057.34 with interest at the rate of 5% per annum thereon from April 30, 1963 until paid; $9,751.58 with interest at the rate of 5% per annum thereon from April 29, 1964 until paid; and $26,386.77 with interest at the rate of 5% per annum thereon from April 30, 1965 until paid, together with all costs of this suit.
The basis for the recovery is that, for the fiscal year ending December 31, 1962, Defendant's annual net profit was $20,573.37; and petitioner's 10%, according to sub-paragraph (b) of Paragraph (2) of said employment contract, amounts to $2,057.34; that, for the fiscal year ending December 31, 1963, Defendant had an annual net profit of $97,515.86, and that petitioner's 10% amounts to $9,751.58; that, for the fiscal year ending December 31, 1964, Defendant's annual net profit of $316,641.28, of which the portion attributable to the period from January 1, 1964, to October 31, 1964, is $263,867.73; and that petitioner's 10%, according to sub-paragraph (b) of Paragraph (2) of said employment contract, amounts to $26,386.77.
Defendant admits the total amount claimed to be due by Plaintiff (amounting to $38,195.69) is considerably less than the $42,234.92 due it by Plaintiff, but does not seek judgment for the difference, but merely asks for dismissal of Plaintiff's suit.
Defendant filed a supplemental answer to reduce the amount admitted to be due Plaintiff to be $35,896.25, subject to the offsets claimed by it.
The District Judge rendered judgment in favor of Plaintiff for $38,195.69, with legal interest from judicial demand, and all costs, from which Defendant has taken this appeal.
As stated above, this is the second attempt by Defendant and its predecessor (American Marine Corporation), under related contracts of October 31, 1961, to avoid payment to Plaintiff of sums which represent part of the consideration for the sale by Plaintiff and his wife of all of the stock of two corporations which they had theretofore owned and operated. In Calhoun v. American Marine Corporation, La.App., 159 So.2d 19, this Court affirmed a judgment in favor of Mr. and Mrs. Calhoun for the balance due by American Marine Corporation *149 ("American Marine") on a five-year promissory note for $52,441.75, on which American Marine had declined to pay the first installment. Only after legal default did American Marine claim that Mr. and Mrs. Calhoun had breached warranties under the stock-sale agreement which entitled it to numerous offsets against the note. Here Plaintiff is claiming a percentage of net profits stipulated to be paid to him by Defendant under an employment contract entered into at the time and as part of the stock-sale agreement. Defendant seeks to defeat that claim by asserting, on behalf of American Marine, which owns all of the stock of Defendant, the same defenses which this Court disallowed in the prior case.
The District Judge characterized the worth of American Marine's purchase when he stated:
"And put this in the recordand I am sure American Marine Company and the officers and officials in charge of that company knew full well exactly what they were doing and that they did in fact buy a gold mine very cheap here."
Plaintiff was employed by Defendant commencing November 1, 1961, and his employment years under the employment contract clearly ran from November 1st of each year to October 31st of the following year. It was stipulated that Defendant's fiscal year is the calendar year. The employment contract provides that, if "only a part of a year of employment shall fall within a fiscal year of the Company, * * * the net profits of the Company * * * for such part of a year shall be that portion of the total net profits of the Company * * * for the fiscal year which the number of days in such part of a year bears to the total number of days in such fiscal year." In other words, portions of Plaintiff's employment years must be considered in relation to Defendant's fiscal years, and not vice versa.
On this basis Plaintiff's 10% of the net profits for Defendant's fiscal years 1961, 1962, 1963 and 1964 must be calculated as follows:
For the fiscal year ending December 31, 1961 a net loss of $174,195.55. (No profit).
For the fiscal year ending December 31, 1962 a net profit of $20,573.37.
For the fiscal year ending December 31, 1963 a net profit of $97,515.86.
For the fiscal year ending December 31, 1964 a net profit of $316,641.28.
Plaintiff, under the employment contract, was to recover 10% of Defendant's net profits, payable in respect of the whole or any part of a year preceding the close of each fiscal year of the Company, and within 120 days after the close of such fiscal year. For the fiscal year ending in 1962 Plaintiff's percentage amounted to $2,057.34. For the fiscal year ending in 1963 he should have been paid $9,751.58. For the fiscal year ending in 1964 the portion of Defendant's net profits attributable to the period from January 1, 1964 to October 31, 1964 (when Plaintiff's 36 months were up) was $263,867.73, so that Plaintiff's percentage amounted to $26,386.77.
After submission of the case to the District Judge, Defendant sought to reopen the case to contradict its own stipulation fixing the amount of its net profits. The figures stipulated were furnished to Plaintiff by Defendant and were based upon audits by Defendant's own accountants. Plaintiff accepted those figures without questioning the various items of income, expense, depreciation, etc., and, in view of the stipulation, did not offer evidence in connection with any of these items.
In effect, Defendant sought to impeach the testimony of its own witness, as well as to contradict its own stipulation, simply because a taxing authority, several years after Plaintiff's percentage of net profits for two fiscal years was due, questioned the figures submitted by Defendant and sought to make a different allocation of interest. The District Judge properly refused *150 to reopen the case. Defendant was not entitled to renounce its bargain on the basis of a subsequent development, without any charge of mutual error, fraud or bad faith on the part of Plaintiff.
It has already been pointed out that, by its entry into the October 31, 1961, stock-sale agreement, American Marine acquired many valuable assets at much less than their real value. Plaintiff had to sell when circumstances resulted in his Company's operation at a loss. He was prevented by the terms of the agreement from re-entering the shell business for the period of three years following the sale, during which he was supposed to receive a percentage of Defendant's profits. Within only one year after the sale, Defendant operated at a profit, and these profits reached great proportions within three years. In spite of this, Plaintiff had to sue American Marine to recover a part of the purchase price of his stock. Calhoun v. American Marine Corporation, supra.
Defendant here asserts breaches of warranties under the stock-sale agreement which ran in favor of American Marine. However, inasmuch as Defendant is an entity distinct from American Marine, it has no standing to urge as offsets against Plaintiff alleged breaches of warranties running in favor of American Marine.
Even if Defendant could claim the breaches of warranties as offsets, it could do so only as one who stands in the shoes of American Marine, and by virtue of the rights it acquired from American Marine. If Defendant can assert such breaches of warranties at all, it has to be bound, just as American Marine is bound, by the final decision of this Court in Calhoun v. American Marine Corporation, supra.
Defendant contends the earlier suit does not have the effect of res judicata because Defendant, a wholly-owned subsidiary of American Marine, is not the same party as American Marine, and because different warranties under the stock-sale agreement were involved in the prior actions. Defendant is estopped to raise issues settled heretofore by the same court, particularly when the judgments rendered were decisive of the issues in this case, since they involve the same contracts and set of circumstances, and legally the same parties. Indeed, how can Defendant claim offset rights belonging to American Marine since this Court held, in the prior case, that no such rights existed under the warranties of the stocksale agreement?
An important point made in the earlier case was that American Marine not only had the opportunity to examine, but did examine minutely the financial condition of the corporations whose stock it acquired during a three-month period intervening between the July 31, 1961 interim financial statement, which is the basis of Defendant's offset claims, and the execution of the stock-sale agreement on October 31, 1961. Defendant's witnesses testified in this, and the earlier case, that nothing was withheld from them in their study of the financial condition of the companies, and that they were virtually put on notice about all the matters of which Defendant now complains. Mr. Goodspeed, a Certified Public Accountant, admitted on cross-examination that he and Mr. Strickland spent a considerable amount of time poring over Defendant's books and records; that he, himself, consumed seven to nine days in the task; that Mr. Favaloro and Defendant's personnel were extremely cooperative in every respect; that he reported his findings to Mr. Durant, president of American Marine; and that he felt he did everything Mr. Durant had instructed him to do in determining Defendant's financial status.
In the prior case we held:
"By October 31, when the sale papers were signed and the warranties made, Defendant's accountant had sufficient time and opportunity to discover any misstatements of inventory and undisclosed liabilities of Louisiana Materials, especially since Defendant was put on guard by the *151 statement in the Interim Financial Report that certain audits and checks had not been made. Defendant should not be heard to plead ignorance of the true facts and now take advantage of warranties placed in the October 31 sale agreement.
"Further, Defendant did not take steps to check the correctness of the warranties, but allowed more than five months to pass before attempting to determine the accuracy of the July 31 inventory. As to the hidden liabilities, Defendant admitted, through its accountant (Mr. Goodspeed), that it knew of most of the liabilities prior to the October 31 sale. Yet Defendant did not choose to take legal advantage of its knowledge until mid-1962. A party who unreasonably delays asserting his rights under the warranties of a contract is estopped to prove alleged inaccuracies. Tex-O-Kan Flour Mills Co. v. Nord, La.App., 18 So.2d 50; Mississippi-Louisiana Syrup Co. v. Russell Sugar Co., 11 La.App. 520, 124 So. 315. In any event, such party bears the burden of proof. Chicago Demolishing Co. v. Werk, 12 La.App. 343, 126 So. 76; Chaignaud v. Baden, La.App., 81 So.2d 76.

* * * * * *
"Defendant had sufficient opportunity to discover any errors in Plaintiffs' financial statement before the sale without relying on the warranties. Since Defendant has not borne the burden of proving its alleged loss, the source from which any such loss would be payable is now moot." 159 So.2d 19, 22-24.
Defendant's unreasonable delay in asserting its offset claims is just as apparent from the record in this case. Numerous demand letters had to be written on behalf of Plaintiff seeking payment of his percentage of net profits. Although the first payment was due Plaintiff on April 30, 1963, and similar payments were due April 29, 1964, and April 30, 1965, under the terms of the employment contract, it was not until August 1965 that Defendant furnished a list of the claimed offsets.
In the earlier case Plaintiff did argue that, if the court there found any warranties had been breached, the remedy for such breach could only be the allowance of an offset against the percentage of net profits due Plaintiff under his employment contract. However, this Court specifically held that no warranties had been breached, as shown by its ruling that:
"Since Defendant has not borne the burden of proving its alleged loss, the source from which any such loss would be payable is now moot." 159 So.2d 19, 23-24.
When this Court held that American Marine should not be heard to plead ignorance of the true facts and now take advantage of warranties placed in the October 31, 1961, sale agreement, it did not limit the application of the term "warranties" to only those warranties which were asserted in the first case. Nor did this Court intend by its holding that Defendant might assert on behalf of American Marine, warranties which American Marine was denied the right to rely upon. Accordingly, Defendant should be barred from claiming offsets against Plaintiff's rightful percentage of net profits.
There can be little doubt that American Marine made a profitable purchase from Plaintiff on October 31, 1961. Within the brief span of three years following the sale it had earned enough net profits to enable it to pay all of the purchase price, including all notes it assumed.
Under his employment contract Plaintiff should have received $2,057.34 on April 30, 1963, $9,751.58 on April 29, 1964, and $26,386.77 on April 30, 1965, but his failure to receive those payments from Defendant resulted in this suit. Instead of awarding legal interest on each sum from its due date, the Trial Judge allowed interest only from judicial demand. However, interest is recoverable on claims arising ex contractu from the time they become due, whether they are liquidated or unliquidated. LSA-C.C. art. 1938; Friede v. Myles Salt *152 Co., La.App., 177 So. 105; Grosz v. Baton Rouge Realty Co., La.App., 17 So.2d 63. In view of LSA-C.C.P. art. 2164, and particularly Official Revision Comment (c) thereunder, this Court must, and does now, affirm the judgment in favor of Plaintiff, with legal interest thereon to run from the respective dates of the amounts due, as stated hereinabove, plus all taxable costs.
Judgment amended and affirmed.