421 So.2d 990 (1982)
MAGNOLIA CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,
v.
Vernon CAUSEY, et al., Defendants-Appellees.
No. 82-162.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1982.
Rehearing Denied December 2, 1982.
Writ Denied February 4, 1983.
*991 John P. Navarre, Oakdale, for defendants-appellees.
James K. Nichols, DeRidder, for plaintiff-appellant.
Before FORET, CUTRER and STOKER, JJ.
STOKER, Judge.
This is a breach of contract suit by plaintiff, Magnolia Construction Company, Inc. (Magnolia), against defendants Cafi Company, Inc. and its president, Vernon Causey (Cafi), seeking damages for increased costs resulting from the defendants' failure to finish work it had contracted to do and for the costs of repairing defendants' defective work. The defendants reconvened for loss of profit because Magnolia allegedly failed to contact them to return to the job site, thus breaching the contract.
The trial judge entered judgment for plaintiff on the main demand, and dismissed defendants' reconventional demand. The plaintiff appeals, asking that this court award a greater amount of damages than that awarded by the trial court. The defendant appeals, asking that the trial court be overturned and judgment be granted on its reconventional demand.
We reject plaintiff's request. Plaintiff has not shown that the trial court was clearly wrong in finding that only 50% of the work repaired was solely caused by Cafi's negligent performance of its duties. However, we find merit in defendants' appeal and reverse that portion of the judgment dismissing defendants' reconventional demand. We find that plaintiff breached the subcontract by hiring another subcontractor instead of notifying Cafi to return to work, as required by the subcontract. Accordingly, we affirm that portion of the trial court's judgment in plaintiff's favor and enter judgment for Cafi Company, Inc. and Vernon Causey on the reconventional demand and award damages thereon.

FACTS
Magnolia was the main contractor and Cafi was hired by them to do subcontracting work on a project for the City of DeRidder. The work involved laying new sewer lines and connecting them to private residences. According to the contract, Cafi was only obligated to jack and bore (bore the holes in which the lines would be laid and put the pipe in them) and make tie-ins (connect the lines Cafi laid with the main sewer lines). After completing most of the work, Cafi left the job in November, 1978, but left its boring and jacking equipment in DeRidder. Magnolia claimed that the weather was bad and that Cafi obtained permission to stop working until the weather improved. Cafi contends it left because it had been told by Magnolia that no more streets would be bored at that time because of problems arising from running into existing utility lines. Cafi maintained that when it left in November it had only two or three bores left to do and that was why it left its equipment in DeRidder, and that it intended to return and complete the work when notified by Magnolia.
*992 Magnolia maintained that in January and February it attempted to contact Cafi to get it to return to work but was unsuccessful. In January or February, Magnolia employed another subcontractor, Glen Frost, to complete Cafi's work. Cafi contends it was never notified by Magnolia to return to work until long after Frost had been employed to complete the work. When in March and April of 1979 it was discovered that the sewer lines in the area were defectively installed, Magnolia began to make repairs and subsequently filed this suit.

I. THE RECONVENTIONAL DEMAND.
There are three issues to be decided regarding the reconventional demand:
1. Was Cafi hired by Magnolia to do the subcontracting work involving jacking and boring that was eventually done by Glen Frost?
2. If so, was the contract mutually terminated before Cafi left the job site in November of 1978? (If there was no mutual termination by the parties, the hiring of Glen Frost to complete the jacking and boring was a breach of contract by Magnolia, and Cafi is entitled to damages.)
3. If the contract was not mutually terminated in November, 1978, has Cafi introduced sufficient evidence to allow this court to make an award to it?

CAFI WAS HIRED TO DO THE JACKING AND BORING DONE BY GLEN FROST
The subcontract contemplated that Cafi was to do all the jacking and boring required of Magnolia under the principal contract. This included the work eventually done by Glen Frost.
The trial judge found this as a matter of fact. In a letter to Meyer and Associates, the project engineers, signed by Lewis Selig, president of Magnolia, Selig states: "If you approve [Vernon Causey as subcontractor] we intend to employ Vernon for all road boring on the projects." (Emphasis supplied.) Mr. Selig also testified at trial that his intention, in entering into the contract with Mr. Causey, was to agree that Causey would do all the work involving road boring on the project.
Magnolia correctly points out in its brief that the letter to Meyer & Associates is not a part of the contract between Magnolia and Caficand that the subcontract does not state that Cafi is to be the sole subcontractor for jacking and boring. Also, Mr. Selig's testimony of his intention to hire Cafi for all the work does not mean that there was a meeting of the minds on this point. However, plaintiff's petition states that because Cafi did not complete the work it was to perform it had to hire Glen Frost as subcontractor. This indicates to us that the parties to the contract intended that Cafi was to complete all the jacking and boring done by Glen Frost.

THE CONTRACT WAS NOT MUTUALLY TERMINATED
We find that there was no mutual termination of the contract. Under the terms of the contract, a three-day written notice was required to be sent by Magnolia to Cafi to return to the job, since Cafi left the job with Magnolia's permission. No such written notice was given. Although Magnolia contends that it attempted to contact Cafi through its president, Vernon Causey, the trial judge found, and we concur, that Magnolia could have contacted Mr. Causey had it truly wished to.
Mr. Willie Carbo, Magnolia's job superintendent on the DeRidder project, testified that he knew where Cafi was working on a different job, and that he made no attempt to contact Mr. Andrew Fisk, a co-owner of Cafi who actually worked on the DeRidder job. Mr. Carbo did say he left phone messages for Mr. Causey to call him back. In fact, Mr. Carbo actually contacted Mr. Causey and obtained permission to use a water truck which was left by Mr. Causey in DeRidder along with other equipment in anticipation of completing the work. However, it is clear that the terms of the contract, requiring written notice by Magnolia to Cafi, were not complied with. There was *993 no justification for the lack of written notice. Mr. Frost was hired in January or February long before the lines were tested for leaks and before the defective work was discovered.
No matter how unwilling Magnolia was to have Cafi return, it is clear that Mr. Causey did not acquiesce in Magnolia's decision to proceed without Cafi. There is no evidence which would allow that assumption. Vernon Causey testified that he was ready and willing to complete the work.
It cannot be implied that Cafi did not wish to continue its contractual relationship with Magnolia because Cafi did not demand to complete the work. Cafi had no duty under the contract to make such a demand and we believe that, considering the contractor-subcontractor relationship in which the contractor directs the work of the subcontractor, supplies the materials, and can direct work stops and stoppages, Cafi cannot be denied recovery because it did not subsequently press the issue with Magnolia.
By the time Mr. Causey and Cafi learned of the breach it would have been useless for Cafi to protest or demand that it be allowed to finish, since Glen Frost and already been hired and had commenced work. Mr. Causey testified that when he learned of Frost's hiring, Frost had almost completed the work.
The trial judge, in finding that Cafi abandoned the subcontract, points to no objective evidence of abandonment and we believe the finding is unsupportable. Under the terms of the subcontract, Cafi was entitled to three days written notice to return to complete the work, but Magnolia failed to give such written notice. Instead, Magnolia hired another subcontractor to complete the work Cafi was hired to do. This was a breach of the subcontract as contemplated by the parties, and upon proper proof, Cafi is entitled to damages reasonably contemplated by the parties.

CAFI SUFFICIENTLY PROVED ITS DAMAGES
Cafi adduced sufficient proof of its damages to allow us to fix an award in its favor. This proof consists of the testimony of Cafi's president, Vernon Causey, the per foot price stated in "Schedule A" of the subcontract, and the amount of work that is definitely established as done by Glen Frost.
Louisiana Civil Code article 1934 states:
"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived ..."
In White v. Rimmer & Garrett, Inc., 340 So.2d 283 (La.1976), the Supreme Court ruled that the damages due a subcontractor for being deprived of his right to perform the contract consist of the profits of which the subcontractor was deprived. The lost profit is to be determined by deducting from the total contract price the costs of labor and material which would have been incurred, rather than assessing loss profit proportionately based on the subcontractor's net income experience on the job.
Magnolia contends that Cafi failed to prove any of its damages and that the uncorroborated testimony of one who seeks the damages testified to is not sufficient proof to allow the award. It is noted that Mr. Causey's testimony was not controverted by cross-examination, nor did Magnolia present its own witnesses as to its potential liability. Mr. Causey's testimony can be summed up as follows:

Gross Profit $25,975
 (3462 feet of boring done by
 Glen Frost according to Magnolia's
 petition)
Expenses 6,750
 ($400 per day wages and taxes
 for 4 workers plus $50 per day
 fuel and rent for boring machines,
 or a total of $450 per
 day, times 15 days of work)
Net Profit $19,200

In Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971), the Louisiana Supreme Court held: "... loss of earnings need not be proved with mathematical certainty, but only by such proof as reasonably establishes the claim."
*994 We do not rely solely on Mr. Causey's testimony to establish his gross profit. The Magnolia-Cafi contract established the per foot contract price of $7.50 and Glen Frost actually bored 3462 feet. Mr. Causey's uncontradicted testimony as to the expenses he would have incurred establishes with reasonable certainty his net profit.
Cafi has proved by a preponderance of the evidence the lost profit sustained when Magnolia failed to notify Cafi to return to the job and hired Glen Frost to complete Cafi's part of the project. The subcontract provides the rate at which Cafi was to be paid. The number of feet Cafi would have bored was concretely established by Magnolia's petition, the testimony, and the findings of the trial court. Mr. Causey's testimony established on the job expenses to a reasonable certainty, uncontradicted by Magnolia. Therefore, we award to plaintiff in reconvention, Vernon Causey and Cafi Company, Inc., the sum of $19,200.
Counsel for the plaintiff in reconvention cites Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978) and urges that interest on the judgment should run from the date of active breach of the contract. Alexander is a redhibition case. Although Justice Dixon cites Louisiana Civil Code Article 1932, which provides that damages are due from the moment of active violation, he also states that the Supreme Court has consistently said that all sums due on contracts bear interest from time of judicial demand. Sullivan v. Williams, 2 La.Ann. 876, 878 (1847). See also Petrie v. Wofford, 3 La. Ann. 562 (1848), Calhoun v. Louisiana Materials Co., Inc., 206 So.2d 147, 151-52 (La. App. 4th Cir.1968), writ denied, 251 La. 1050, 208 So.2d 324 (1968); Friede v. Myles Salt Co., 177 So. 105, 108 (La.App.1937). Interest therefore should run from the date of judicial demand.

II. THE MAIN DEMAND.
There are two issues to be resolved regarding the main demand regarding Magnolia damages for the costs of repairing Cafi's defective work:
1. Did the trial court err in not allowing damages for equipment costs, office overhead, and on site overhead as not having been adequately proven?
2. Did the trial court err in awarding to Magnolia only 50% of the proven costs of repairing defective work?

EVIDENCE OF OVERHEAD COSTS IS INSUFFICIENT
The trial judge decided the evidence of overhead costs and equipment costs was too vague and general to establish the claim, and we agree.
The office manager and bookkeeper, Mr. Tommy Nezat, offered the only evidence of the costs of repair. As to the equipment costs, he said he believed an hourly rate based on a "blue book" figure was charged for the use of the equipment, but his testimony was no more specific or detailed than that.
Mr. Nezat also testified as to overhead expenses, both office and on site. As to office overhead, he said that a figure of "15 or 16%" was applied to the other costs involved to get an amount. The percentage figure was determined by dividing total job expenditures into general administrative expenses for the year. As to on site overhead, Mr. Nezat said the 10% figure was used as a "rough estimate" of actual overhead costs.
By their nature, overhead costs are difficult to prove and do not lend themselves to precise allocation to specific jobs performed. Overhead has been disallowed as insufficiently proved in other cases. See La. Power & Light Company v. Smith, 343 So.2d 367 (La.App. 4th Cir.1977), and Illinois Central Railroad Co. v. Cullen, 235 So.2d 154 (La. App. 4th Cir.1970). Therefore, we cannot say the trial court was clearly wrong in refusing such an award in this case.

FIFTY PERCENT ALLOCATION CORRECT
The damages the trial court did award for labor, payroll taxes and insurance, and materials, were reduced by the *995 trial court by 50%. The trial court held that the evidence would not support a finding that more than 50% of the defective work was due solely to Cafi's poor workmenship. We cannot say this allocation of damages is clearly wrong.
The testimony was overwhelming that Magnolia allowed Cafi to install saddles and make tie-ins to (connections with) sewer lines without using primer before the pipes were glued together. The testimony was also overwhelming that gluing the pipes without the primer was improper and allowed the pipes to become pulled apart, necessitating some of the repair costs complained of. Furthermore, the testimony indicates that Magnolia employees themselves gued pipe without first using primer.
Other damages to pipes appear to result from heavy blows, probably from a carelessly operated backhoe. Both Magnolia and Cafi used backhoes in their operations, Cafi in back filling trenches and Magnolia in trying to locate leaking joints.
Although the daily reports of the repair crews show the amount of work done in repairing, they do not adequately show which party was responsible for the damage. Some of the reports, signed by Magnolia foreman George Duprey, state that Bill Festerban, a former employee of Magnolia's, was responsible for some of the defective installations. As stated before, Cafi made some connections without primer with the permission of Magnolia and some of the faulty connections must be the fault of Magnolia. In view of the evidence presented, we cannot say the trial court was clearly wrong in its findings and judgment on the main demand. Therefore, we affirm the part of the judgment awarding damages to Magnolia.

DECREE
For the foregoing reasons, that part of the trial court's judgment awarding damages to Magnolia Construction Company, Inc., and against Cafi Company, Inc., is affirmed.
The part of the judgment rejecting the reconventional demand of Vernon Causey and Cafi Company, Inc., is reversed and it is ordered, adjudged and decreed that there be judgment in favor of Cafi Company, Inc., and Vernon Causey and against Magnolia Construction Company, Inc., in the sum of $19,200 with legal interest from the date of judicial demand.
It is further ordered, adjudged, and decreed that all costs of these proceedings, both in the trial court and in this appeal, be assessed equally to the parties.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.