439 So.2d 523 (1983)
FRENCH JORDAN, INC.
v.
OILFIELD SALES AND SERVICE, INC.
No. 82 CA 1090.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
*524 Sidney C. Sundbery, Houma, for plaintiff.
William O. Bonin, Landry, Watkins & Bonin, New Iberia, for defendant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
On December 21, 1978, a 1965 International Harvester van, equipped with oil field testing equipment and owned by French Jordan, Inc. (plaintiff), was involved in an intersectional collision on Amelia Road in St. Mary Parish. Plaintiff's vehicle was unique because equipment was installed in it which made it a mobile oil field pipe *525 inspection unit. As it was equipped, plaintiff could go to the customer's site and do work rather than require the customer to bring the work to its premises. A truck owned by Oilfield Sales and Service, Inc. (defendant) and driven by its employee, Ulyses I. Bias, failed to obey a stop sign and struck plaintiff's unit. Liability was not a serious issue.
The trial judge found that the van was rendered a total loss, and he awarded plaintiff $1,200.00 for it, based on the estimated fair market value of the van at the time of the accident. He also found that plaintiff was entitled to recover the sums of $31,113.29 and $6,991.89 as the costs of labor and materials, respectively, which plaintiff expended to remove the relatively undamaged inspection equipment from the damaged van to replace it in another van. However, the court assessed plaintiff a 50% discount factor for "reasonable depreciation" to the labor and materials, so the total property damage award was only $20,252.59.
The court also found that the loss of income while the replacement van was being outfitted was approximately $25,000.00 per month and $75,000.00 for the entire period. The court also determined, based on the income and expense figures presented at trial, that plaintiff's profit margin on the $75,000.00 would have been 16%. Based on this finding, the court awarded plaintiff $12,000.00 for lost profits.
The total judgment for plaintiff, including an amount of $206.33 for towing charges, was $32,458.92 together with legal interest from March 23, 1979, until paid. Defendants were taxed for costs and expert witness fees.
Plaintiff perfected this appeal, urging three assignments of error:
(1) the trial court erred when it discounted by 50% the labor and materials costs incurred by plaintiff to remove the pipe inspection equipment from the demolished van and remount it in the replacement van;
(2) the trial court erred when it reduced plaintiff's loss of income by assessing plaintiff 84% for expenses; and
(3) the trial court erred when it refused to admit the testimony of Dr. Randolph Rice, an economist.
In determining damages, the trier of fact is accorded much discretion, especially where the facts of the case preclude a precise computation of damages. Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La.1981); Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978); Hymel v. Tom Alexander Brokerage Co., 348 So.2d 104 (La.App. 4th Cir.1977), writ denied 350 So.2d 894 (La.1977). No mechanical rule of determining damages is to be applied; the quantum in each case must be determined considering the facts and circumstances of that case. Coleman v. Victor, 326 So.2d 344 (La.1976); Kalmn, Inc. v. Empiregas, Corp., 406 So.2d 276 (La.App. 3rd Cir.1981). Although trial judges are granted great discretion in determining damage awards, these awards must be made in accordance with law. Cenac v. Duplantis Moving & Storage Co., 407 So.2d 424 (La.App. 1st Cir.1981). The proper goal of a damage award is to restore the plaintiff, as closely as possible, to the position which he would have occupied had the accident never occurred. Coleman, 326 So.2d at 346; Kalmn, 406 So.2d at 281; Williams v. Louisiana Machinery Co., Inc., 387 So.2d 8 (La.App. 3rd Cir.1980).
DAMAGES FOR PIPE TESTING UNIT
As stated, the vehicle in question was rather unique in that equipment had been installed in it which enabled plaintiff to perform on-site inspections of oil field piping materials. Comparable vehicles did not exist, and the trial court found that it was unable to approximate the value of the pipe testing unit as a whole. It therefore awarded plaintiff $1,200.00 for the loss of the van alone. This figure obtained from Edward Fontenot, defendant's witness, was accepted by the trial court as the accurate fair market value of the van on the date of the accident. Based on the record, we do not find this determination to be manifestly *526 erroneous and affirm the trial court's award of $1,200.00 for loss of the van.
Soon after the accident, plaintiff began installing the pipe testing equipment, which had been in the demolished van, in a replacement van. This equipment had survived the collision relatively unscathed. Plaintiff proved that it had expended $31,113.29 in wages to its own employees and to some outside labor to remove the equipment from the old van, repair it, and install it in the replacement van. The trial court found this figure to be an accurate computation of the labor costs incurred by plaintiff. The trial court also accepted plaintiff's claim of $6,991.89 as the cost of materials required to complete the installation. However, the trial court assessed plaintiff a 50% depreciation factor on these labor and materials costs. Plaintiff asserts that this assessment was erroneous.
Generally, three approaches have been followed by the Louisiana courts in arriving at the amount of damages to property: (1) the cost of restoration if the thing damaged can be adequately repaired; (2) the difference in value prior to and following the damage; or (3) the cost of replacement less reasonable depreciation, if the value before and after the damage cannot be reasonably determined, or if the cost of repairs exceeds the value of the thing damaged. Cenac, 407 So.2d at 427; Kalmn, 406 So.2d at 281; Hymel, 348 So.2d at 105; Davis v. Roberts, 194 So.2d 772 (La.App. 1st Cir.1967). The trial court considered these three tests, concluded the first two were inapplicable, and applied the third testcost of replacement less depreciation. We find, under the principles announced in Coleman and Kalmn, that strict application of the third test to the unique facts presented here constitutes reversible error.
In order to return plaintiff to the position it occupied before the accident, the award must be sufficient to restore the pipe inspection unit. Considering the peculiar nature of the unit, i.e., that it is a van containing specialized equipment installed by the owner, we find it logical to consider restoration of the pipe inspection unit to include replacement of the van and restoration of the equipment to its condition before the accident. We have already affirmed the trial court's award for replacement of the van, and we find that installation of the same equipment in the new van qualifies as a restoration of the pipe inspection unit.
The purpose of assessing a depreciation factor under the third test is to prevent plaintiff from replacing an old vehicle with a new vehicle and occupying a better position after the accident than before. That consideration is not present regarding the labor costs because those expenditures merely restored to plaintiff a van with equipment, i.e., a pipe inspection unit. Likewise, the materials used to reinstall the equipment are closely analogous to the paint and chrome trim used to repair a dented fender.
We find that the expenditures on these materials merely helped to restore the equipment; therefore, the application of a depreciation factor in this situation was improper and in error.
DAMAGES FOR LOST PROFITS
Plaintiff is entitled to the income which it lost while its pipe testing equipment was being installed in another van. The accident occurred in late December, 1978, and the new unit was ready by the end of March, 1979. The trial court found, considering the complexity of the unit, that three months was not an unreasonable time to restore it; that the replacement was begun promptly and carried out diligently; and that plaintiff was therefore entitled to the income which it lost for the first three months of 1979. We agree.
The evidence presented at trial included the testimony of accountants, both for plaintiff and defendant, and the testimony of Jerry Ledet, plaintiff's manager. Despite the availability of financial statements prepared by the accountants, the trial court did not determine precisely the amount of profits lost when plaintiff refused certain jobs while the unit was down. Noting that average monthly sales attributable to each unit varied from $17,616.00 per *527 unit for the six months immediately preceding the month of the accident to $24,694.00 per unit for the three months that the unit in question was not in service, and continued to rise to $28,500.00 per month per unit for the following fiscal year, the trial court found that $25,000.00 per month was a reasonable loss of income attributable to the unit being out of service. We would have perhaps preferred an alternative method of estimating the lost income, such as consideration of the income attributable to this disabled van and the availability of other vans to do the foregone jobs as the calls came in. However, based on the evidence contained in the record, it was not an abuse of discretion to determine the loss of income by comparing the sales-per-unit figures for the months immediately surrounding and including the three months during which the unit was disabled. The finding of a three-month loss of $75,000.00 is very reasonable, considering the gradually increasing per-unit sales figures over the months in question. We agree with the finding the trial court as to the amount of income lost for the three-month period after the accident.
In determining the expenses to be subtracted from the income in arriving at a figure for lost profits, the trial court noted that the net pre-tax income for the fiscal year in which the accident occurred was 16% of sales. He therefore assessed plaintiff 84% of the $75,000.00 as expenses and awarded $12,000.00 as lost profit. However, this finding failed to take into account the uncontradicted testimony of Ledet and the accountants, Errol Broussard, Jr., and Charles Castaing. All three testified that had plaintiff's van been operating, plaintiff would have incurred some expenses, but would not have incurred expenses in all categories used to compute the company's overall expenses. Ledet testified further as to the particular categories in which plaintiff would have incurred expenses had the jobs been performed. According to him, additional expenses would have been incurred in six specific areas totaling 21.6% of the additional gross income produced. Broussard, plaintiff's accountant, testified that Ledet's estimation of the variable costs assignable to the lost unit was "a very accurate approach"; Castaing, defendant's accountant, also endorsed the exclusion of the fixed expenses from the profit determination. We find that the reasonable approach is to deduct only those items of variable expense which would have increased had the unit been operational. To deny plaintiff recovery of his fixed expenses is to fall short of making him whole. If the accident had never occurred, plaintiff would have received some income from the unit which would have been allocated to payment of the fixed expenses. To deny it that margin of profit now would force plaintiff to pay the same fixed expenses from a smaller pool of income, namely, the profit made from the remaining pipe inspection units.
This is in accord with the Louisiana treatment of fixed expenses. White v. Rimmer & Garrett, Inc., 340 So.2d 283 (La.1976); Magnolia Construction Company, Inc. v. Causey, 421 So.2d 990 (La.App. 3rd Cir. 1982), writ denied 426 So.2d 177 (La.1983); Minyard v. Culotta, 128 So.2d 797 (La.App. 4th Cir.1961). Even though these cases dealt with the recovery of damages by subcontractors whose subcontracts were breached by general contractors, we believe the principle is the same. Accordingly, we find that the trial court committed manifest error in deducting 84% from the income figure to determine profit. We hold that the proper measure of damages for plaintiff's loss of profit is $58,800.00, which is the $75,000.00 of lost income less 21.6% as the amount of expenses plaintiff would have incurred to do the extra work.
EXCLUSION OF PLAINTIFF'S WITNESS
The trial court sustained defendant's objection to the testimony of Dr. Randolph Rice, an expert economist, based on plaintiff's failure under La.C.C.P. art. 1428 to supplement prior answers to defendant's interrogatories and reveal the names of all persons plaintiff might call at trial as expert witnesses. Defendant did not learn *528 about Dr. Rice until he was called as a witness. Under these circumstances, the trial judge was correct in refusing to permit Dr. Rice to testify.
DECREE
The judgment of the trial court is amended to increase the property damage award to $38,105.18 to include the cost of all labor and materials necessary to restore the unit without depreciation and to increase the loss of profit to $58,800.00. In all other respects, it is affirmed.
All costs of this appeal are taxed to defendants.
AMENDED AND AFFIRMED.