454 So.2d 817 (1984)
Alfred CARTER
v.
GULF STATES UTILITIES COMPANY.
No. 83 CA 0653.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
Rehearing Denied August 24, 1984.
*819 Joseph A. Gladney, Baton Rouge, for plaintiff.
W. Luther Wilson, Baton Rouge, for defendant.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
This is an appeal from a judgment of the trial court which awarded Alfred Carter (Carter) $11,492.25 for damages to his home due to the fault of Gulf States Utilities Company (GSU).
On June 2, 1981, a truck owned and operated by Baton Rouge Insulation Company struck a low hanging electrical service wire owned by GSU causing the electrical meter to be pulled through the roof of Carter's house. GSU immediately assumed complete responsibility for all damages caused by the low hanging wire. GSU hired an electrician to reinstall the meter and fixtures, repair all wiring in Carter's house and reconnect the service. GSU also honored requests by Carter for repair expenses to an air conditioner and television set allegedly damaged in the accident.
GSU then sent three independent contractors to Carter's house to estimate the necessary repairs. These estimates, which were provided to Carter, were $150, $500 and $560.95. Carter then secured estimates for repairs. After Carter tendered these estimates, GSU refused to pay claiming they were not liable for the complete remodeling of Carter's home.
Carter subsequently filed suit for $12,247.00 based on the estimates he had received.
GSU answered, admitting liability for the accident, requesting credits for what was paid and requesting reimbursement for the television set and air conditioner repairs. GSU then deposited into the registry of the Court the average of the three estimates GSU had secured.
After trial on the merits, the trial court awarded Carter $11,550. This award represented the entire estimate of one of Carter's contractors, Mr. Richard Lockhart. GSU appeals from this judgment alleging only one specification of error. Specifically, GSU argues the trial court erred in determining the applicable measure of damages in this case.
In determining damages, the trier of fact is accorded much discretion, especially where the facts of the case preclude a precise computation of damages. Emerson *820 v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La.1981); Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978); Hymel v. Tom Alexander Brokerage Co., 348 So.2d 104 (La.App. 4th Cir.1977), writ denied 350 So.2d 894 (La. 1977). No mechanical rule of determining damages is to be applied; the quantum in each case must be determined considering the facts and circumstances of that case. Coleman v. Victor, 326 So.2d 344 (La. 1976); Kalmn, Inc. v. Empiregas Corp., 406 So.2d 276 (La.App. 3rd Cir.1981). Although trial judges are granted great discretion in determining damage awards, these awards must be made in accordance with law. Cenac v. Duplantis Moving & Storage Co., Inc., 407 So.2d 424 (La.App. 1st Cir.1981). The proper goal of a damage award is to restore the plaintiff, as closely as possible, to the position which he would have occupied had the accident never occurred. Coleman, 326 So.2d at 346; Kalmn, 406 So.2d at 281; Williams v. Louisiana Machinery Co., Inc., 387 So.2d 8 (La.App. 3rd Cir.1980).
Generally, three approaches have been followed by the Louisiana courts in arriving at the amount of damages to property; (1) the cost of restoration if the thing damaged can be adequately repaired; (2) the difference in value prior to and following the damage; or (3) the cost of replacement new, less reasonable depreciation, if the value before and after the damage cannot be reasonably determined, or if the cost of the repairs exceeds the value of the thing damaged. Cenac, 407 So.2d at 427; Kalmn, 406 So.2d at 281; Hymel, 348 So.2d at 105; Davis v. Roberts, 194 So.2d 772 (La.App. 1st Cir.1967).
It is clear from the record that the trial court assumed the house could be adequately repaired and awarded what he found to be the cost of restoration. However, the record does not reflect the value of the house prior to or after the accident. Without knowing these facts, we cannot determine the proper measure of damage. We are forced to remand for these determinations. We can review the trial court's findings as to the extent of damages. Then, the trial court will know the appropriate repairs that will have to be made in determining which is the proper method of assessing damages.
The trial judge was confronted with opposing views as to the actual damage to Carter's home. GSU argues essentially that there was only "spot damage". Carter argues that the damage is more extensive and that the damages shown on the estimates secured from his contractor properly represent the damages to his home and the amounts necessary to restore his home to its prior condition.
Carter introduced the testimony of three contractors from the Livingston Parish area, Mr. Richard Lockhart, Mr. Willie Turner and Mr. Frankie Bell. Mr. Lockhart testified that he could repair the home for $11,500.00. Mr. Turner testified he could repair the house for $11,478 and Mr. Bell testified he could repair the house for $10,850. GSU also secured three estimates from independent contractors. The average of these estimates is $403.65.
The trial judge, after examining the house himself, noted considerable damage to Carter's home. He apparently believed that the estimates given by the contractors testifying on Carter's behalf were more credible and realistic. He accepted the estimate of Mr. Lockhart in particular in making the award.[1] Therefore, we will review *821 separately each item of damage as revealed in Mr. Lockhart's estimate. Each item has been given a letter designation to aid in our determination of the extent of actual damage to Carter's home due to the fault of GSU.
Item A. Panel Two Rooms $450.00
GSU alleges that there was insufficient damage to the paneling to require the repaneling of two complete rooms.
The record reveals that GSU unsuccessfully attempted to cover up the hole in the roof and prevent water damages. The photographs reveal the efforts were piecemeal at best. The evidence reflects the efforts were unsuccessful. Both Mr. Lockhart and Mr. Turner found water damage to the paneling due to water seepage through the hole in the ceiling and roof that was made by the GSU meter being pulled through. Further, Mr. Lockhart testified that the paneling along the front wall would have to be pulled loose in order to repair the broken plates behind the wall and that this process would destroy the paneling beyond reuse. Therefore, we affirm the trial court's finding of actual damage to the paneling of two rooms.
Item B. Replace Ceilings $2,500.00
The record reveals that as a result of the accident, a number of ceiling tiles in both the living room and front bedroom fell from the ceiling. GSU argues that the ceiling tiles already needed replacing because they had dry rotted, and at the most GSU can only be responsible for the replacement of the ceiling tiles in the living room and front bedroom, not the entire house.
Mr. Lockhart and Mr. Turner testified that there are many tiles with water damage due to water seeping in through the hole in the roof caused by the meter. However, there is no evidence in the record to support a finding that there was actual damage to the ceiling tiles throughout the house for which GSU could be held responsible. Therefore, we reverse that portion of the judgment awarding $2,500.00 for the replacement of ceiling tiles throughout the house and remand this item of damage to the trial court for a determination of the cost to replace the ceiling tiles in the living room and front bedroom.
Item C., F., G., L., and N. $2798.00

Item C. Bricks $ 950.00
Item F. Sand 60.00
Item G. Mortar 168.00
Item L. Brick Layer 1500.00
Item N. Black Board Insulation 120.00

Each of the items of damages listed above relate to the removal of brick and rebricking of the front wall of Carter's home. The evidence indicates that the area of actual brick damage by the meter does not cover the whole wall, but the whole wall is loose and will move at touch. GSU alleges it is not responsible for the rebricking of the entire house-front, back and sides. However, Mr. Lockhart testified that the estimate given is for the front wall only, not the back and sides. Therefore, we must only review the finding by the trial court that the front brick wall was damaged to such an extent that the entire wall needed to be replaced.
There appears to be no dispute that the front wall sways. However, GSU argues that there were no brick-ties (metal strips designed to provide lateral support) in any of the brick walls and this causes the sway, not the accident. GSU alleges this was evidenced by the fact that all the brick walls in the house will move when pushed against just as much as the front wall.
GSU also argues that the mechanics of the accident prove that the accident could not have caused the brick-ties to break. GSU alleges the forces of the accident actually caused the meter to be pushed inward as compared to the meter being pulled up and out as alleged by Carter. This inward force, GSU contends, would have merely bent the brick-ties and not broken them.
The record does not reveal sufficient facts for us to determine the force exerted by the accident. However, we find *822 such a determination unnecessary because the testimony of Mr. Lockhart reveals that regardless of whether the meter pulled the brick up and away or pushed the meter into the brick wall, either type of force would break the brick-ties. The trial judge went to the house with counsel for GSU and inspected the walls. He found the front wall shook more than the others indicating a breaking rather than an absence of brickties. We cannot say the finding of the trial judge that the brick-ties were broken by the accident is manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
GSU argues last that the foundation is cracked and that absent the brick-ties, the brick walls probably could have easily been shaken prior to the accident. This argument also lacks merit because, as we noted previously, the evidence will support a finding that there were, in fact, brick-ties in Carter's home. Accordingly, the trial court was not in error in finding that the front brick wall would have to be torn down and rebuilt because the brick-ties were broken in the accident.
Item E. Building Walls, and Replacing Decking, Facia and Soffit $1,500.00
GSU concedes that the roof decking and soffit needed to be replaced. However, GSU alleges the facia can be repaired adequately by replacing only that portion that was damaged rather than replacing the facia across the entire front of the house.
At trial Mr. Lockhart testified that the only way to repair the damaged facia is to replace the facia all the way across the front of the house. There was no evidence presented to contradict Mr. Lockhart.
GSU then argues that the contractors it secured found only one unrelated cracked rafter brace and no damage to the walls.
Mr. Lockhart testified that there was water damage to the inner front wall and the top plates caused by water seeping into the house through the hole in the roof and that the only way to repair the damage would be to replace the deteriorated plates and studs. Therefore, the trial court was not in error in finding that the front wall, decking, facia and soffit were actually damaged to such an extent that it is necessary to replace the soffit, decking, entire facia and the damaged wall.
Item H. Shingles and Felt $522.00
Item I. Nails $65.00
The above items of damages relate to the re-roofing of Carter's entire house. GSU concedes that the area damaged needed to be repaired but argues it is not responsible for the re-roofing of the entire house because the roof already needed replacing. Specifically, GSU alleges that only the damaged shingles need to be replaced.
Mr. Lockhart, in a deposition taken January 3, 1983, stated the following:
A. Right, Replace the shingles on the complete house because some of the decking had to be replaced, and see, you tear up shingles, you cannot replace them, you know, patch them after they get a certain age.
Q. In other words, you were not going to just spot repair the roof?
A. Oh, no, couldn't spot repair that roof. I'm sure I couldn't do it because them shingles, you know, are layers on there.
The trial court obviously believed Mr. Lockhart's testimony that it is impossible to properly repair the roof by spot repairing the shingles. We find no error in this conclusion.
Item D. Labor on Outside of House $2,400.00
The record is devoid of information as to what this time of damage actually covers. We note that the labor for the brick laying, building of the front wall and painting is already provided for in other items of damages. Therefore, the only remaining outside labor that could fall under this item is the labor to re-roof the house. However, since the record does not adequately define this item of damage, we remand to the trial court for a determination *823 of what this item of damage actually covers.
Item J. Insulation $115.00
Carter alleges and the trial court awarded damages for installation of insulation on the basis that proper repair of the home should include insulation. We disagree with this award.
GSU cannot be held responsible for the replacement of something that was never present in Carter's home. The record reveals that there was no insulation in Carter's home, therefore that portion of the judgment awarding $115.00 for the installation of insulation is reversed.
Item K. Paint and Painting $700.00
GSU concedes it is responsible for painting the soffit and facia along the front of the house but argues it is not responsible for repainting the entire house. Mr. Lockhart testified at trial that this item represented the cost to paint the entire front of the house including the soffit, facia, shutters, door and trim. Therefore, GSU is not being held responsible for repainting the entire house. However, there still remains the issue of whether the actual damage caused by GSU to the front of the house requires that GSU be held responsible for painting the shutters and front door.
Mr. Lockhart testified that he would have to remove the shutters before he could replace the brick wall which probably would cause damage to the shutters necessitating painting of the shutters before they were put back on the new brick wall. However, there was no testimony that the front door was actually damaged from the accident or would have to be removed in order to replace the front brick wall. Consequently, this item of damage awarding $700.00 for paint and painting is reversed and remanded to the district court for a determination of the cost to paint the entire front of the house except the front door.
Item L. Misc. $500.00
GSU alleges this item of damage is not recoverable because it is not sufficiently defined. We agree. GSU can only be responsible for the damage caused to Carter's home by the meter being pulled through the roof. An award of $500.00 for miscellaneous expenses by the trial court was an abuse of discretion and is therefore reversed.
Credit to GSU
The trial court credited GSU with $570.75 for repairs made, and for payment for damages admittedly not incurred in the accident. We find no error in this credit.
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with the views expressed in this opinion. All costs are to be paid by appellant.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] Estimate of Mr. Richard Lockhart:

 AMOUNT
A. Panel two rooms $ 450.00
B. Replace ceilings 2,500.00
C. Bricks 950.00
D. Labor on outside of house 2,400.00
E. Building walls & replace
 decking, facia and soffit 1,500.00
F. Sand 60.00
G. Mortar 168.00
H. Shingles & felt 522.00
I. Nails 65.00
J. Insulation 115.00
K. Paint & Painting 700.00
L. Brick layer 1,500.00
M. Misc. 500.00
N. Black Board Insulation 120.00
 ___________
 $ 11,550.00